UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA

                                                    12-050 (S1) (CBA)

          -vs-

JAMES LAFORTE et. al.,

                              Defendants.
-----------------------------------------------------X




### REPLY MEMORANDUM OF LAW IN SUPPORT OF SEVERANCE MOTION




Cutler & Parlatore, PLLC
*Attorneys for James LaForte*
260 Madison Avenue, 22nd Floor
New York, New York, 10016
212-679-6669
212-202-4787 Fax

## INTRODUCTION

Defendant James LaForte ("LaForte") submits this Memorandum of Law to reply to the Government's opposition of his motion to sever his trial from that of his co-defendants.   As discussed more fully below, the Government's opposition fails to establish either that the joinder was proper or to counter the significant risk of prejudicial spillover which would result from a joint trial between Laforte and the codefendants charged with RICO.

## ARGUMENTS

### I.
### A SEVERANCE SHOULD BE GRANTED BECAUSE RULE 8(B) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE DICTATE THIS TO BE AN IMPROPER JOINDER OF DEFENDANTS

While the Government correctly cites the same cases cited by the defense for the proposition that severance is properly governed by Rule 8(b), they conspicuously ignored the threshold standard of review which states that Rule 8 is a pleading rule and the Court must examine the argument within the confines of the four corners of the indictment and not rely on proffers by the Government.

In *Unites States v. Rajaratnam,* 753 F. Supp. 2d 299 (S.D.N.Y. 2010), Judge Holwell wrote:

> "Under the plain language of Rule 8(b), the decision to join parties turns on what is 'alleged' in the 'indictment.'" [*United States v*.] *Rittweger*, 524 F.3d [171] at 178 [(2nd Cir. 2008)]. Indeed, as the government readily acknowledges, the Second Circuit has "caution[ed] that the plain language of Rule 8(b) does not appear to allow for consideration of pre-trial representations not contained in the indictment, just as the language of the Rule does not allow for consideration of evidence at trial." *Id*. at 178 n. 3; *see also United States v. Jawara*, 474 F.3d 565, 578 (9th Cir. 2007) ("[T]he bottom line is that the similar character of the joined offenses should be

1

> ascertainable—either readily apparent or reasonably inferred—from the face of the indictment. Courts should not have to engage in inferential gymnastics or resort to implausible levels of abstraction to divine similarity."); *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002) ("Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment."); *United States v. Wadena*, 152 F.3d 831, 848 (8th Cir. 1998) ("An indictment must reveal on its face a proper basis for joinder."); *United States v. Coleman*, 22 F.3d 126, 134 (7th Cir. 1994) ("'Rule 8 joinder is based solely on the face of the indictment....'"); *United States v. Terry*, 911 F.2d 272, 276 (9th Cir. 1990) ("Because Rule 8 is concerned with the propriety of joining offenses in the indictment, the validity of the joinder is determined solely by the allegations in the indictment."). Heeding that caution, this court will analyze whether the counts against [the Defendant], *as described in the language on the face of the Indictment*, "are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *Cervone*, 907 F.2d at 341 (quotation marks omitted).

*Id.* at 306.

In derogation of this standard, the Government's opposition is based solely on proffers not contained within the indictment that "the charges in this case arise out of a common scheme by Bonanno and Gambino crime family members" and that "Laforte and his co-defendants, notably Anthony Graziano, routinely kept each other apprised of their respective schemes, pursuant to the protocols of La Cosa Nostra." *Gov't Opp. Brief* p. 7-8.

In fact, while the indictment details all other defendants' alleged ties to organized crime, the indictment is absolutely bereft of any allegations that LaForte is associated with any criminal enterprise, Gambino or otherwise.   Furthermore, the indictment contains no discussion that "protocols of La Cosa Nostra" require members or associates to keep members and associates of other families apprised of their respective schemes.

Notwithstanding the Government's failure to meet the pleading requirements, even if this Court were to allow the Government to proceed by proffer, their argument still fails.  There has been no evidence proffered in any of the Government's filings or discovery that LaForte's alleged criminal activity was conducted on behalf of any organization.  Indeed, the Government's theory seems to be that LaForte was trying to collect money that was owed to him personally.

The entirety of the evidence and allegations against LaForte is that after being released from prison, he met with Hector "Junior" Pagan to inquire about a debt owed to him by John Doe #9.  There have been no allegations that this wasn't a legitimate debt or that the debt was derived from any illegal activity.  There have also been no threats of violence.  During this meeting, Pagan informed LaForte that John Doe #9 was about to begin a long prison term and that LaForte would not be able to recover his debt.  The Government has no evidence that LaForte made any other efforts to collect this debt (i.e. contacting John Doe #9 or any of his family members directly or even seeking a second meeting with Pagan).

The Government has proffered that there was a later conversation where co-defendant Anthony Graziano ("Graziano"), when informed of this by Pagan, commented that "this guy is gonna look to kick it upstairs, I think. You understand? Or maybe he did, I don't know."  The Government expects Pagan to interpret this conversation to be regarding LaForte and claims that it will be relevant to show the relationship between the two crime families.  However, in addition to the fact that the Government has no evidence that LaForte actually "kick[ed] it upstairs" beyond Graziano's comment, the Government has conveniently ignored the fact that this statement is inadmissible hearsay.

3

Graziano is not a co-conspirator with LaForte. Even if the Court were to accept the proffers of the Government, which are not contained within the indictment, regarding LaForte's alleged association with the Gambino family, that is insufficient to find that they are co-conspirators. The Government can proffer no evidence that Graziano intended to help LaForte recover on his debt.

Additionally, this statement was not made in furtherance of any alleged conspiracy, as would be required for admissibility under F.R.E. 801(d)(2)(e).[1] At best, Graziano is an uninterested third-party making a comment on the situation which was described to him by Pagan, who was acting as an agent of the Government.

Thus all the Government's claims that the evidence of the enterprise and with it their "expert on La Cosa Nostra" would be admissible against LaForte are completely baseless. LaForte is charged with a single extortion and the only witnesses with relevant and admissible evidence against him will be Pagan and possibly a law enforcement witness regarding the limited scope of the investigation related to LaForte. There is absolutely no overlap between this evidence and that against any of the co-defendants.

Thus, there is absolutely no basis for joinder between LaForte and his co-defendants. Accordingly, his case should be severed.

## II.

### A SEVERANCE SHOULD BE GRANTED TO PREVENT THE SUBSTANTIAL RISK OF JUDICIAL SPILLOVER AND WRONGFUL CONVICTION

The Government's argument that LaForte has failed to establish a substantial risk of spillover prejudice is equally baseless. Indeed, where, as discussed above, there is *no*

---

[1] Indeed, the Grand Jury presumably heard all the evidence presented by the Government about LaForte and Graziano's participation in this alleged extortion conspiracy and failed to indict Graziano as part of this conspiracy.

*overlap* of the evidence admissible against LaForte and that of his co-defendants, all the evidence of organized crime affiliations and the history and methods of La Cosa Nostra would irreparably infect the mindsets of the jurors when it comes to considering LaForte's guilt or innocence.

Were LaForte to be tried alone, the defense would move *in limine* to exclude all reference to organized crime pursuant to F.R.E. 403 as the risk of unfair prejudice substantially outweighs its probative value.  He is only charged with a single extortion which includes no allegations or evidence that such extortion was part of any organized criminal enterprise.

While the Government has correctly cited numerous cases which stand for the proposition that joint trials promote judicial economy by avoiding "repetitive, and often identical, presentations of evidence" these cases cannot be applied factually to the case at bar, as there will be little to no repetitive or identical evidence admissible.  Indeed, the only foreseeable overlap is that the undersigned will likely intend to explore the same voluminous impeachment material during the cross-examination of Pagan as counsel for the RICO defendants intend.[2]

Insofar as we previously argued that a severance is necessary to preserve LaForte's speedy trial rights, those arguments are withdrawn.  While the Government has failed to cite a single case to counter the cases cited on this issue, we withdraw this argument based on co-defendant Vincent Badalamenti's demand for a trial to begin on April 23, 2012.

---

[2] Although the Government has refused to disclose any *Giglio* material thusfar, we do know that Pagan has engaged in numerous violent crimes, including a July 2010 robbery/murder of an alleged Luchese associate, for which he expects leniency in exchange for his testimony here.

5

## CONCLUSION

In sum we respectfully submit that because of the improper joinder of Mr. LaForte to his co-defendants, along with the severe risk of a wrongful conviction due to prejudicial spillover, the trial of James LaForte should be severed from that of his co-defendants.

Dated:  March 23, 2012
         New York, New York


                                        Respectfully submitted,


                                         /s/ Timothy Parlatore
                                        Timothy C. Parlatore, Esq.
                                        Cutler & Parlatore PLLC
                                        *Attorneys for the Defendant*
                                        260 Madison Avenue 22nd floor
                                        New York, New York 10016
                                        Telephone (212) 679-6669
                                        Facsimile (212) 202-4787