

**CUTLER & PARLATORE, PLLC**
ATTORNEYS AND COUNSELLORS AT LAW

BRUCE CUTLER, ESQ., PARTNER
TIMOTHY C. PARLATORE, ESQ., PARTNER
NATASHA D. MAROSI, ESQ., ASSOCIATE
260 MADISON AVENUE, 22ND FLOOR
NEW YORK, NEW YORK 10016
TEL 212.679.6669 | FAX 212.202.4787

May 22, 2012

The Honorable Carol B. Amon
Chief United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

*Re: U.S. v. Badalamenti, et al., 12-cr-050 (S-3)(CBA)*

Dear Chief Judge Amon:

    I represent the Defendant James LaForte, in the above referenced matter and am writing to request that this Court grant the Defendant bail pending sentencing.

    James LaForte was arrested on January 18, 2012 and subsequently arraigned. At his arraignment, the Defendant consented to an Order of Detention without prejudice to make a later bail application. Since that time, Mr. LaForte has remained in custody at the Metropolitan Detention Center.

    On April 4, 2012, Mr. LaForte plead guilty to one count of Illegal Gambling, in violation of 18 USC §1955(a) with a recommended guidelines range of 12-18 months. He is currently scheduled to be sentenced on July 25, 2012 at 9:30 a.m.

### Applicable Standards

    Under 18 U.S.C. §3143, a defendant who is awaiting the imposition or execution of sentence shall be released if the Court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community."

### Defendant Poses No Risk of Flight

    James LaForte poses no risk of flight or non-appearance. Mr. LaForte has been a resident of Staten Island for over 30 years, maintaining strong ties to the community, and holding varying partnerships in local businesses. With the exception of his mother and siblings, whom reside in Philadelphia, his father and the majority of his family are long-time Staten Island residents. These family members have and will continue to provide a support network vital to Mr. LaForte. His father's willingness to accommodate Mr.

LaForte during the interim period until his voluntary surrender is one such example of how invaluable this support network is. Mr. LaForte is not in possession of a passport and has no means by which to leave the country.

Of course, the strongest factor to consider when assessing the risk of flight is the sentence that Mr. Laforte is facing. Mr. LaForte is facing a recommended guidelines range of 12-18 months pursuant to his plea agreement. Of this, he has already served over four months. It is highly unlikely that he would flee to avoid the imposition of the remainder of his sentence. It is respectfully submitted to this Court that Mr. LaForte stands to gain nothing at all by either failing to appear for Sentencing or failing to voluntarily surrender for confinement, and does not present a flight risk.

### Defendant Poses No Danger to the Community

James LaForte does not pose a risk of danger to any singular person or the community as a whole. He stands convicted of a single non-violent, non-drug related offense. There is no statutory presumption of dangerousness and there is nothing in the record relating to his present conviction which would indicate that he poses any identifiable threat to any persons or the whole of the community.

### Sufficient Bail Will Ensure the Defendant's Appearance at Sentencing

Several family members of James LaForte have offered their assistance in support of his release pending Sentencing, by offering themselves as suretors.

Mr. LaForte's aunt Agatha Schillace, uncle, Michael Yennella, friend Lisa Bronca, and his brother-in-law, Anthony Gibson are all willing to sign surety bonds for Mr. Laforte.[1] These family members have all agreed subject their livelihoods to forfeiture, should Mr. LaForte fail to appear for his Sentencing, or surrender for confinement. These sacrifices should hold a high degree of moral suasion, when making a determination for a grant of bail.

### A Grant of Bail Would Allow Defendant to Be Properly Designated by the Bureau of Prisons and Serve an Appropriate Sentence

The designation of an inmate to a specific institution is governed by the Bureau of Prisons ("BOP") Program Statement 5100.08. An integral part of the process of designation and placement is the scoring of an inmate's security level. A grant of bail, which would allow him to voluntarily surrender is key for Mr. LaForte to gain a

---

[1] I am providing all of their financial information to AUSA Jack Dennehy under separate cover.

reduction of three points in the calculation of his security level score, and ultimately means the difference between designation to a low or minimum level security facility.[2]

Additionally, given the length of Mr. Laforte's anticipated sentence, as well as the amount of time he would have already served, should the instant application be denied, delays in the BOP processing his Judgment and calculating his sentence will likely cause a delay in both his designation to a facility appropriate to his security classification, as well as a timely transfer to a Community Corrections Center ("CCC").[3] This will result in Mr. Laforte potentially spending more time incarcerated than the Court anticipates when imposing a sentence as well as the likelihood that he will spend that time in much harsher and more restrictive conditions than are appropriate for his confining offense.

## Conclusion

For all the reasons stated herein, we respectfully request that a bail hearing be scheduled as soon as practicable and that this Court grant Mr. LaForte bail pending sentencing, and permit him to voluntarily surrender to his designated BOP facility.

Thank you for your time and consideration.

>  Respectfully submitted,
>
>  /s/ Timothy C. Parlatore
>
>  Timothy C. Parlatore, Esq.

CC:    AUSA. Jack Dennehy
       All other Counsel via ECF

---

[2] See BOP P5100.08, Chapter 4, which calculates Mr. Laforte's security point total as 14 without the three-point reduction for self-surrender. Minimum Security facilities require a point total of 0-11 points, whereas Low Security facilities require 12-15 points. BOP P510.08, Capter 5, Page 12.

[3] See BOP P5100.08, Chapter 7, Page 9, which provides that paperwork for transfer to CCC should be submitted 12-18 months in advance